IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01334-PAB-KLM

BRANDON BAKER, Rev.,

     Plaintiff,

v.

THE STATE OF COLORADO, and
COLORADO ATTORNEY GENERAL,

     Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's Amended Complaint** [#14] (the "Motion").[1]  Plaintiff filed a Response [#20] on October 2, 2013, in opposition to the Motion, and Defendants filed a Reply [#21] on October 16, 2013. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for recommendation regarding disposition [#10].  The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that Defendants' Motion [#14] be **GRANTED** and that Plaintiff's Amended Complaint [#8] be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction or, in the alternative, **DISMISSED WITH PREJUDICE** for failure

_____

[1]   [#14] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

to state a claim upon which relief may be granted.

## I. Summary of the Case

In short, Plaintiff challenges Colorado's legal limit on marijuana in the bloodstream while driving. *See generally Am. Compl.* [#8].  Plaintiff alleges that he is a legal, medical, and sacramental cannabis user and runs a church that uses cannabis in its religious practices. *Id.* ¶¶ 1-2.  He sues Defendants State of Colorado and Colorado Attorney General John Suthers in his official and individual capacity (collectively, "Defendants") regarding the 2013 passage of Colorado House Bill 13-1325 ("HB 1325"). *Id.* ¶¶ 2, 3, 18. The law, codified at Colo. Rev. Stat. § 42-4-1301(6)(a)(IV), states that "if [a] driver's blood contain[s] five nanograms or more of Delta 9-Tetrahydrocannabinal [THC] per millimeter of whole blood, as shown by analysis of the defendant's blood," this fact can lead to a "permissible inference that the defendant was under the influence of one or more drugs." I will refer to the law at issue as the "marijuana DUI statute."

Plaintiff alleges that the marijuana DUI statute violates the rights guaranteed to him under the First Amendment, Fourth Amendment, Sixth Amendment, and Fourteenth Amendment.[2] *See generally Am. Compl.* [#8].  Specifically, Plaintiff first alleges that under the First Amendment, Colorado's five nanogram ("ng") legal driving limit fails to exempt religious users, which is unconstitutional. *Id.* ¶ 23.  He alleges that because one cannot differentiate between religious, recreational, or medical use of cannabis, Colorado's blanket

---

[2]  Plaintiff specifically alleges that the statute violates the "5th/14th Amendments." *Am. Compl.* [#8] ¶ 12.  However, because the Fifth Amendment applies to laws enacted by the federal government, which is not involved in this case, the Court interprets Plaintiff's allegation as alleging a violation of the Fourteenth Amendment. *Dodson v. Board of County Comm.*, 878 F. Supp. 1227, 1241-1242 (holding that the court can change a pro se plaintiff's causes of action to better fit his allegations).

rule limiting all drivers to five ngs overinclusively infringes on religious users' First Amendment right to freely exercise their religious beliefs. *Id.* ¶ 7. Further, Plaintiff alleges that the Religious Freedom Restoration Act ("RFRA"), the American Indian Religious Freedom Act ("AIRFA"), the Religious Liberty Protection Act ("RLPA"), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") collectively support the conclusion that the religious use of cannabis is a protected activity and may not be substantially burdened unless the law furthers a compelling governmental interest. *Id.* ¶ 25.

Second, Plaintiff alleges that under the Fourth Amendment, a warrantless blood test accompanying a DUI investigation is unconstitutional. *Id.* ¶ 39. He alleges that a DUI investigation does not qualify as an "emergency" that would permit an officer to administer a blood test without obtaining a warrant. *Id.*

Third, Plaintiff alleges that under the Sixth Amendment, a court's admission of a lab report or officer report into evidence without testimony of the lab technician who prepared the report violates the confrontation clause. *Id.* ¶¶ 29, 30, 32-33, 36. Plaintiff alleges that because the sole purpose of these reports is to analyze whether probable cause exists and submit them as evidence against the defendant, the reports are "testimonial," triggering his right to confront the witness against him. *Id.* ¶ 36.

Finally, Plaintiff alleges that under the Fourteenth Amendment, the definitions of "impaired" and "under the influence" in the marijuana DUI statute are unconstitutionally vague with respect to cannabis use.[3] *Id.* ¶ 50. Accordingly, he proposes that the Court

---

[3] Plaintiff alleges that the terms are "not defined in regards to cannabis" and "too ambiguous." *Am. Compl.* [#8] ¶ 50. The Court interprets these allegations to assert that the statute is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment.

apply the commonly understood dictionary meaning of those terms.[4]   Additionally, Plaintiff alleges that because hundreds of thousands of medical marijuana patients with Delta 9-THC levels exceeding five ngs have been driving for thirteen years without causing "DUI issues," the law was not actually enacted to protect the people of the state, as Defendants have argued.  *Id.* ¶ 54.   Plaintiff further alleges that there is no way to determine whether a driver is "impaired" merely by analyzing the metabolites in his urine or the Delta 9-THC levels in his blood and without an accurate testing procedure, the law's "permissible inference" of the driver's impairment is unconstitutional.  *Id.* ¶¶ 9-10.   Finally, Plaintiff alleges that because he has shown a reasonable probability of success on the merits of his claim, a preliminary injunction halting enforcement of the marijuana DUI statute is warranted.  *Id.* ¶¶ 47-49, 54.

Defendants argue in the Motion to Dismiss [#14] that pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's case should be dismissed because Plaintiff fails to allege a constitutional violation to the statute both "as applied" and on its face.  *See Motion* [#14] at 6-7.   Further, as discussed *infra* III.A., the Court sua sponte raises a subject-matter jurisdiction issue pursuant to Fed. R. Civ. P. 12(b)(1) relating to Plaintiff's standing to pursue claims.

## II. Standard of Review

Because federal courts are courts of limited jurisdiction, the Court must have a basis

---

[4]  Plaintiff cites *Sanger v. Dennis*, 148 P.3d 404, 409 (Colo. Ct. App. 2006), as legal precedent for this approach.  Additionally, he provides the following dictionary meanings: (1) *"under the influence":* "*driving under the influence (DUI) n. commonly called 'drunk driving,' it refers to operating a motor vehicle while one's blood alcohol content is above the* legal limit set by statute, which supposedly is the level at which a person cannot drive safely*. State statutes vary as to what that level is, but it ranges from .08 to .10 (20-25% variance!)*"; and (2) "impaired": "*adjective - 1. weakened, diminished, or damaged: 2. functioning poorly or inadequately.*"  *Am. Compl.* [#8] ¶ 51 (italics and underline in original).

for exercising jurisdiction over the parties and the case. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

## A.  Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). If at any time, the Court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 506. A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings. *Id.* at 1003.

## B.  Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain

enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

"entitlement to relief."'" *Iqbal*, 556 U.S. at 678.

## C.    Plaintiff's Pro Se Status

Plaintiff is appearing pro se.  The Court must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). Additionally, pro se litigants must follow the same procedural rules that govern other litigants.  *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.  Analysis

## A.    Standing

Standing is a threshold requirement, and without it, the Court lacks jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492-493 (2009).  A person has standing to assert a claim when he alleges that he has experienced a particularized injury that is fairly traceable to defendants and capable of being redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  In other words, Plaintiff must allege that he has suffered an injury in fact, assert a causal connection between the injury in fact and the challenged action, and demonstrate that there is a likelihood that the injury can be redressed by a favorable decision.  *See Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011).  The injury-in-fact requirement means that Plaintiff must allege "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or

imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560).

Here, Plaintiff fails to allege an injury in fact for the following reasons.  First, Plaintiff alleges that Colorado's marijuana DUI statute violates his First Amendment right to free exercise of religion because it infringes on his right to (1) personally use cannabis for medical and sacramental purposes and (2) run a church that uses cannabis in its religious practices. *Am. Compl.* [#8] ¶¶ 7, 21-27.  However, Plaintiff does not allege facts explaining how the marijuana DUI statute infringes on his ability to use cannabis for personal use or during his church's religious practices.  Further, Plaintiff does not allege facts indicating that his religion specifically necessitates marijuana use resulting in five ngs or more of Delta 9-THC in his bloodstream while driving a car.  Therefore, Plaintiff fails to allege facts showing that Colorado's marijuana DUI statute has unconstitutionally burdened his religious practices. *See Employ't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990) (holding that Oregon's complete ban on peyote was not unconstitutional because "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability.'").  Accordingly, he fails to allege an injury in fact in connection with his First Amendment claim.

Second, Plaintiff alleges that pursuant to the Fourth Amendment, an involuntary blood test accompanying a DUI investigation is unconstitutional. *Am. Compl.* [#8] ¶¶ 39-42. He further alleges that under the Sixth Amendment, if a hypothetical lab report of a motorist's blood test was admitted in court and the hypothetical lab technician refused to testify, the motorist's confrontation clause rights would be violated. *Id.* ¶¶ 29-38.  These allegations are insufficient to create standing. *See Baker v. Colorado*, No.11-cv-02578-PAB-KLM, 2012 WL 3744641, at *2 (D. Colo. Apr. 23, 2012) (citing *Jordan v. Sosa*, 654

F.3d 1012, 1019 (10th Cir. 2011)).  Plaintiff alleges that potential behavior by state actors in hypothetical situations would be unconstitutional.  However, he fails to allege facts supporting the conclusion that this potential behavior is anything more than "conjectural or hypothetical."  He does not allege that he has been or will imminently be subject to an involuntary blood test or an uncooperative lab technician.  Therefore, Plaintiff fails to allege facts showing that Colorado's marijuana DUI statute has or will cause him an injury in fact.

Third, Plaintiff alleges that under the Due Process Clause of the Fourteenth Amendment, the definitions of "impaired" and "under the influence" found in the marijuana DUI statute are unconstitutionally vague with respect to cannabis use.  However, Plaintiff does not allege facts supporting the conclusion that there is a "credible threat" of his prosecution under the statute.  *See Cooke v. Hickenlooper*, No. 13-cv-01300-MSK-MJW, 2013 WL 6384218, at *4 (D. Colo. Nov. 27, 2013) (holding that the plaintiff lacked standing where he failed to allege a credible threat of prosecution and accompanying statutory guidance letters advised the plaintiff of conduct that was permissible).  Because Plaintiff does not allege any facts supporting the conclusion that there is a "real and immediate threat" of his prosecution for driving a car while impaired above the five ng statutory limit, he does not satisfy the injury-in-fact requirement.  *Id.* at *4, 7 (holding that where none of the plaintiffs had alleged that they intended to sell, transfer, or possess gun magazines, they failed to allege sufficient facts to show a credible threat of prosecution for violation of a particular portion of a Colorado statute).  Overall, Plaintiff has done no more than imply in a most generalized way that he potentially *could* be injured by the statutory marijuana driving limit.  This is insufficient.  *See, e.g.*, *Tarrant Reg'l Water Dist. v. Herrmann*, No. CIV-07-0045-HE, 2010 WL 2817220, at *2 (W.D. Okla. July 16, 2010) (stating that "the mere

possibility of some future injury to plaintiff [was] not enough to confer standing").

In his Response to the Motion to Dismiss, Plaintiff restates generalized statistics regarding decreased Colorado automobile accidents and the mild to nonexistent effects of THC on heavy cannabis-using drivers who develop a tolerance to the drug. *Response* [#20] at 4. Plaintiff argues that "[t]here [are] an infinite amount of scenarios easily concocted showing multiple ways these complained statutes violate on their face as well as applied to the Plaintiff, must we really wait until one surface[s] to ensure and enforce Plaintiff's Constitutional rights?" *Id.* at 5. However, alleging an "infinite amount of scenarios" does not meet the "concrete and particularized" threshold required for Plaintiff to sufficiently allege standing. *See Baker*, 2012 WL 3744641, at *3 (holding that Plaintiff failed to allege standing where he merely implied that he could be injured by the marijuana laws he challenged).

Plaintiff simply has not provided any specific allegations regarding interference with or hindrance of his religious activities or infliction of a legally-cognizable injury in fact by the marijuana DUI statute. *See, e.g.*, *McCormick v. City of Lawrence, Kansas*, 253 F. Supp. 2d 1172, 1207-08 (D. Kan. 2003) (stating that the plaintiff had not alleged an injury in fact giving rise to a § 1983 claim where he merely alleged that his access to courts had been "interfered with, hindered and impeded" without providing any particular cases in which he had been unsuccessful or otherwise hindered).

Therefore, because Plaintiff fails to allege "an invasion of a legally protected interest that is (a) concrete and particularized; and (b) actual or imminent" in any of his constitutional claims, the Court finds that he has not met his burden of showing that he has standing to pursue this lawsuit. Accordingly, the court **recommends** that Plaintiff's claims

be **dismissed without prejudice**.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-1217 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim.").

**B.    Plaintiff's As-Applied Challenge**

The Court is aware of the precedent holding that lack of subject matter jurisdiction precludes a court from further considering the merits or substance of a plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  *See Hankins v. Norton*, No. Civ.A 04-CV-02196-PSF-OES, 2005 WL 2141007, at *13 (D. Colo. Sept. 2, 2005).  However, mindful that the District Court may reach a different conclusion regarding Plaintiff's standing and because this is a Recommendation, the Court also addresses the merits of Plaintiff's claims.  *See American v. Chase Home Fin. LLC*, No. 11-cv-01041-WJM-MEH, 2012 WL 1686168, at *13 (D. Colo. Feb. 21, 2012) (recommending that the plaintiffs' claims be dismissed based on expiration of the statute of limitations period, yet, while "mindful [that] the District Court may reach a different conclusion," also addressing whether the claims were plausible on the merits).

Defendants move to dismiss Plaintiff's "as-applied" constitutional claims pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff's Amended Complaint does not challenge any "specific application of HB 1325."[5]  As stated *supra* III.A., Plaintiff does not allege any concrete and particularized injury in fact in the Amended Complaint.  Nor has he alleged

---

[5] Although Defendants refer to Fed. R. Civ. P. 12(b)(5), their argument is directed to Fed. R. Civ. P. 12(b)(6).

an injury that is actual or imminent.  *Id.*  Accordingly, the Court's reasoning with respect to standing in section III.A. is also applicable to Plaintiff's "as-applied" challenge.  Therefore, in light of the standard for dismissal under Rule 12(b)(6), the Court **recommends** that all of Plaintiff's "as applied" constitutional claims be **dismissed with prejudice**.  *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (stating that dismissal with prejudice is appropriate where the plaintiff's amended pleadings fail to cure the deficiencies in his claims).

**C.  Plaintiff's Facial Challenge**

A plaintiff can only succeed on a facial challenge to a statute by "establish [ing] that no set of circumstances exists under which the Act would be valid ..., [meaning] that the law is unconstitutional in all of its applications."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).  When determining whether a law is facially invalid, courts must be careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases.  *Id.* at 450.  Thus, a facial challenge fails where "at least some" constitutional application exists.  *Id.* at 457 (citing *Schall v. Martin*, 467 U.S. 253, 264 (1984)).

**1.  First Amendment**

Plaintiff alleges that pursuant to the First Amendment, Colorado's marijuana DUI statute fails to exempt religious users, which violates the Constitution.  *Id.* ¶ 23 (citing *Oregon v. Smith*, 494 U.S. 872 (1990)).  He alleges that because one cannot differentiate between religious, recreational, and medical use, the broad five ng Delta 9-THC per milliliter limit overinclusively infringes on the First Amendment right of religious cannabis

users to freely exercise their religious beliefs. *Id.* ¶ 7. He further alleges that there is no way to determine whether a driver is "impaired" simply by analyzing the metabolites in his urine or Delta 9-THC levels in his blood. Thus, he insists, without accurate testing procedures, the marijuana DUI statute is unconstitutional. *Id.* ¶¶ 9-10.

The Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof....." U.S. CONST. amend. I.; *Smith*, 494 U.S. at 876-877. The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires. *Smith*, 494 U.S. at 877. Thus, the First Amendment precludes all "governmental regulation of religious beliefs as such." *Sherbert v. Verner*, 374 U.S. 398, 402 (1963). The government may not compel affirmation of religious belief, *see Torcaso v. Watkins*, 367 U.S. 488, 492-493 (1961), punish the expression of religious doctrines it believes to be false, *United States v. Ballard*, 322 U.S. 78, 86-88 (1944), impose special disabilities on the basis of religious views or religious status, *see McDaniel v. Paty*, 435 U.S. 618, 633 (1978), or lend its power to one side in controversies over religious authority or dogma, *see Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 445, 452 (1969).

A state law banning "the performance of (or abstention from)" physical acts only when they are engaged in for religious reasons, or only because of the religious belief that they display, violates the First Amendment. *Smith*, 494 U.S. at 877. For example, a law banning the casting of "statues that are to be used for worship purposes," or prohibiting bowing down before a golden calf would be unconstitutional. *Id.* at 877-878.

However, where a law is not specifically directed at religious practice and is

constitutional as applied to those who use a drug for other reasons, an individual's religious beliefs do not excuse him from compliance. *United States v. Meyers*, 95 F.3d 1475, 1480-1481 (10th Cir. 1996) (citing *Smith*, 494 U.S. at 882-883, 878-879). The right of free exercise does not relieve an individual of the obligation to comply with a "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982). Because the Amended Complaint contains no allegation that Colorado's marijuana DUI statute represents an attempt to regulate religious beliefs or the communication of religious beliefs, Plaintiff fails to allege a First Amendment violation.

Furthermore, pursuant to Colorado law, Plaintiff is free to use cannabis during his religious practices. The only inconvenience to Plaintiff is that, while operating a vehicle, he cannot use cannabis to such a degree that it produces five or more ng's of Delta 9-THC in his blood. Plaintiff fails to allege that this particular level of cannabis use is an important or necessary aspect of his religious practices. He simply does not address how the marijuana DUI statute burdens him in his Amended Complaint. Accordingly, the Court **recommends** that Plaintiff's First Amendment facial challenge be **dismissed with prejudice**. *Sheldon*, 269 F.3d at 1207 n.5.

### 2.    Fourth Amendment

Plaintiff alleges that pursuant to the Fourth Amendment, a warrantless blood test accompanying a DUI investigation is unconstitutional. *Am. Compl.* [#8] ¶ 39. Specifically, he alleges that a DUI investigation does not qualify as an "emergency" that would permit an officer to conduct a warrantless blood test, and that driving a car does not abolish a

motorist's privacy interest in preventing an officer from compelling a blood draw.  *Id.*

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. CONST. amend. IV.  A compelled physical intrusion to obtain a sample of blood for use as evidence in a criminal investigation implicates an individual's "most personal and deep-rooted expectations of privacy."  *Winston v. Lee*, 470 U.S. 753, 760 (1985); *see also Skinner v. Ry. Labor Executives' Assn.,* 489 U.S. 602, 616 (1989).  Because "[s]earch warrants are ordinarily required for searches of dwellings, . . .absent an emergency, no less [can] be where intrusions into the human body are concerned," even when the search is conducted following a lawful arrest.  *Id.* at 770.

However, a warrantless search of a person will be deemed constitutionally permissible if it falls within a recognized exception.  *See, e.g.*, *United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.").  One well-recognized exception, and the one at issue in this case, "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment."  *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (internal quotation marks and brackets omitted).  A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search, including law enforcement's need to provide emergency assistance to an occupant of a home, *Michigan v. Fisher*, 558 U.S. 45, 47-48 (2009), engage in "hot pursuit" of a fleeing suspect, *United States v. Santana*, 427 U.S. 38, 42-43 (1976), or enter a burning building

to put out a fire and investigate its cause, *Michigan v. Tyler*, 436 U.S. 499, 509-510 (1978). Furthermore, in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence. *See Cupp v. Murphy*, 412 U.S. 291, 296 (1973); *Kerr v. California*, 374 U.S. 23, 40-41 (1963).

The natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, *see Schmerber v. State of California*, 86 S. Ct. 1826, 1835-1836 (1966), but whether a warrantless blood test is reasonable must be determined case by case based on the totality of the circumstances. *See Missouri v. McNeely*, 131 S. Ct. 1552, 1559 (2013). The passage of HB 1325 now allows a blood test result above five ng of THC per millimeter to be used more effectively in court by juries when evaluating evidence to determine whether a defendant was (1) impaired to the "slightest degree," Colo. Rev. Stat. § 42-4-1301(1)(g) or (2) "substantially incapable" of exercising clear judgment, sufficient physical control, or due care in the safe operation of a vehicle.

Plaintiff's assertion that a DUI investigation is not an emergency justifying warrantless blood tests is incorrect. *See McNeely*, 133 S. Ct. at 1561 ("We do not doubt that some circumstances [during drunk-driving investigations] will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test."); *see, e.g., People v. Shepherd*, 906 P.2d 607, 610 (Colo. 1995) (holding that exigent circumstances existed where the suspect was transported to a hospital for medical attention while police officers remained at the scene to investigate the cause of the accident); *People v. Schall*, 59 P.3d 848, 853 (Colo. 2002) (holding that exigent circumstances existed for investigating officers at the scene to direct a blood draw where the suspect had been airlifted to a hospital

following the accident).  Plaintiff's broad assertion that a DUI investigation can never qualify as an emergency which justifies warrantless blood tests is contrary to applicable law. Therefore, the Court **recommends** that Plaintiff's Fourth Amendment facial challenge be **dismissed with prejudice**.  *Sheldon*, 269 F.3d at 1207 n.5.

### 3.    Sixth Amendment

Plaintiff alleges that pursuant to the Confrontation Clause of the Sixth Amendment, the admission of a lab report, officer report, or blood drawer's report into evidence without the lab technician's testimony is unconstitutional.  *Id.* ¶¶ 29, 30, 32-33, 36.  Plaintiff alleges that because the purpose of these reports is to analyze whether probable cause exists and for use at trial against the defendant, the reports are "testimonial."  *Id.* ¶ 36.

The confrontation clause grants the accused "[i]n all criminal prosecutions, ... the right ... to be confronted with the witnesses against him." *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2706 (2011).  In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the U.S. Supreme Court held that the clause permits admission of "[t]estimonial statements of witnesses absent from trial ... only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  Later, in *Melendez–Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Supreme Court declined to create a "forensic evidence" exception to *Crawford*, holding that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, was considered to be "testimonial" for confrontation clause purposes.  The Court held that the prosecution may not introduce such a report without offering a live witness competent to testify to the truth of the report's statements. 557 U.S. at 329 ("The Sixth Amendment does not permit the

prosecution to prove its case via *ex parte* out-of-court affidavits.").

Here, Plaintiff simply assumes that the government will introduce lab reports without supporting testimony and states the well-established conclusion that such procedures are unconstitutional.  However, he fails to allege any facts supporting the conclusion that the government will violate this requirement in future trials.  Colorado's marijuana DUI statute does not contain a provision that bans a laboratory technician from testifying in court. Accordingly, because Plaintiff fails to allege that the statute would infringe on a defendant's right to confront the lab technician, the Court **recommends** his Sixth Amendment facial challenge be **dismissed with prejudice**.  *Sheldon*, 269 F.3d at 1207 n.5.

### 4.    Fourteenth Amendment

Plaintiff alleges that pursuant to the Fourteenth Amendment, the definitions of "impaired" and "under the influence" in the marijuana DUI statute are unconstitutionally vague with respect to cannabis use.  *Id.* ¶ 50.  Accordingly, he proposes that the Court apply the commonly understood dictionary meanings of those terms.  Furthermore, he alleges that Defendants' argument that these law were enacted on an emergency basis to protect the people of the state is false because hundreds of thousands of medical marijuana patients with Delta 9-THC levels exceeding five ngs have been driving for thirteen years without a DUI occurrence problem.  *Id.* ¶ 54.  Plaintiff argues that because he has alleged a reasonable probability of success on the merits of his claim, a preliminary injunction here is warranted.  *Id.* ¶¶ 47-49, 54.

The void-for-vagueness doctrine requires that a statute define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and

in a manner that does not encourage arbitrary and discriminatory enforcement. *Bushco v. Shurtleff*, 729 F.3d 1294, 1306 (10th Cir. 2013).  "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  But the Supreme Court has noted that "speculation about possible vagueness in hypothetical situations not before the court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Id.* at 733 (internal quotation marks omitted).

First, as stated *supra* III.A., the Court recommends that Plaintiff's constitutional claims be dismissed and therefore, he has not established that he is "likely to succeed on the merits" of his claims.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.")

Second, Plaintiff claims that the terms "impaired" and "under the influence" are not sufficiently defined in the statute as they relate to cannabis use.  However, the marijuana DUI statute defines driving under the influence "as driving a motor vehicle or vehicle when a person has consumed alcohol or one or more drugs, or a combination of alcohol and one or more drugs, that affects the person to a degree that the person is substantially incapable, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle." Colo. Rev. Stat. § 42-4-1301(1)(f).

Additionally, the marijuana DUI statute defines driving while impaired as "driving a motor vehicle or vehicle when a person has consumed alcohol or one or more drugs, or a combination of both alcohol and one or more drugs, that affects the person to the slightest degree so that the person is less able than the person ordinarily would have been, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle."  Cannabis, being a drug, is included in the statutory provision's reference to "one or more drugs."  Colo. Rev. Stat. § 42-4-1301(1)(f)-(g).  Therefore, the Court finds that Plaintiff's assertion that the terms are not sufficiently defined with respect to cannabis use is incorrect.

Furthermore, Plaintiff fails to allege facts rebutting the Colorado legislature's conclusion that most people will be impaired at the five ng per millimeter level.  Plaintiff asserts that "[t]here is no advanced threat of harm to the community because although those testing positive for cannabis while driving has [risen] significantly[,] the amount of fatalities and accidents on the road have decreased as Colorado's cannabis use grows dramatically." *Response* [#20] at 1.  Plaintiff additionally alleges that "[t]he number of people killed on Colorado roads in 2009 appears to be at the lowest point in three decades." *Response* [#20] at 2.

The statistics cited by Plaintiff are unpersuasive.  While a correlation between an increase in cannabis use and a decline in automobile accidents might exist, the relevant inquiry is whether driving under the influence increases one's probability of causing an automobile accident.  The fact that cannabis use has increased while automobile accidents have decreased does not unequivocally defeat causation.  The number of motor vehicle deaths, not only in Colorado, but nationwide, has been declining for the past three

decades.[6]  Plaintiff points to no data which supports the conclusion that a national increase in marijuana use has been the cause of the decline in automobile accidents and deaths. In fact, quite the opposite.  Scientific research has shown that drivers who consume cannabis within three hours of driving are nearly twice as likely to cause a vehicle collision as those who are not under the influence of drugs or alcohol.[7]  As stated *supra* III.A., the evidence presented to the Colorado Senate showed that the risk was even higher.

The Colorado legislature, hearing evidence that a person with five ng of Delta 9-THC in his blood was far more likely to cause an automobile crash, determined that at that level, impairment reaches a socially intolerable level.[8]  Because the five ng statutory limit provides sufficient guidance as to what constitutes driving "under the influence" and fair notice of the prohibited conduct, Plaintiff fails to sufficiently allege that the statute is unconstitutionally vague.  *See Bushco*, 729 F.3d at 1306 (holding statute was not

---

[6]  *See* Angela G. Keane, *U.S. Highway Deaths Decline for a Fifth Year, Longest Streak Since 1899*, BLOOMBERG (Dec. 8, 2011, 12:22 PM), http://www.bloomberg.com/news/2011-12-08/u-s-highway-deaths-decline-2-9-falling-for-fifth-year-1-.html; U.S. DEPARTMENT OF TRANSPORTATION: NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION, TRAFFIC SAFETY FACTS (2010 DATA), http://www-nrd.nhtsa.dot.gov/Pubs/811630.pdf (citing 32,885 Americans killed in 2010 down from 42,196 Americans killed in 2001); WIKIPEDIA - LIST OF MOTOR VEHICLE DEATHS IN U.S. BY YEAR, http://en.wikipedia.org /wiki/List_of_motor_vehicle_deaths_in_U.S. by_year (showing that in 1980, there were 51,091 deaths, in 1990, there were 44,599 deaths, in 2000, there were 41,945 deaths, and in 2012, there were 34,080 deaths.);  Kelly Kennedy, *Death rates from guns, traffic accidents converging*, USA TODAY (Jan. 9, 2013, 12:21 PM), http://www.usatoday.com/story/news/nation/2013/01/09/guns-traffic-deaths-rates/1784595/ ("Deaths from traffic accidents have dropped dramatically over the last 10 years.").

[7]  British Medical Journal, *Cannabis use doubles chances of vehicle crash, review finds*, SCIENCE DAILY (Feb. 10, 2012), http://www.sciencedaily.com/releases /2012/02/120210111254.htm ("Results show that if cannabis is consumed before driving a motor vehicle, the risk of collision is nearly doubled.").

[8]  SENATE COMMITTEE ON FINANCE, BILL SUMMARY FOR HB 13-1325, ATTACHMENT E, "UNDERSTANDING MARIJUANA TERMINOLOGY" (May 5, 2013), http://www.leg.state.co.us/CLICS/CLICS2013A/commsumm.nsf/CommByBillSumm/67FCE59EFD2C49D287257B63006C8583.

unconstitutionally vague where there was sufficient guidance and fair notice of the prohibited conduct).   Therefore, the Court **recommends** that Plaintiff's Fourteenth Amendment facial challenge be **dismissed with prejudice**.   *Sheldon*, 269 F.3d at 1207 n.5.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss [#14] be **GRANTED** and that Plaintiff's Amended Complaint [#8] be **DISMISSED**.

It is **FURTHER RECOMMENDED** that all of Plaintiff's claims (First Amendment, Fourth Amendment, Sixth Amendment, and Fourteenth Amendment) be **DISMISSED WITHOUT PREJUDICE** on the basis of standing pursuant to Fed. R. Civ. P. 12(b)(1).

It is **FURTHER RECOMMENDED** that in the event Plaintiff's claims are not dismissed pursuant to Fed. R. Civ. P. 12(b)(1), all of his claims be **DISMISSED WITH PREJUDICE** on the merits pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-148 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-1413 (10th Cir. 1996).   A party's objections to this

Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 7, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge